IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
U.S.  EQUAL  EMPLOYMENT        )
OPPORTUNITY COMMISSION,        )
                               )
        Plaintiff,             )
                               )       1:11-cv-498
    &                          )
                               )
CONTONIUS GILL,                )
                               )
        Plaintiff-Intervenor,  )
                               )
     v.                        )
                               )
A.C. WIDENHOUSE, INC.,         )
                               )
        Defendant.             )
```

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

This civil rights action was tried to a jury (in a bifurcated proceeding) from January 22 to 28, 2013. On January 28, 2013, the jury returned separate verdicts as to liability and damages in favor of Plaintiffs U.S. Equal Employment Opportunity Commission ("EEOC") and Contonius Gill ("Mr. Gill") and against Defendant A.C. Widenhouse, Inc. ("Widenhouse"). (Docs. 85 & 88.) Specifically, as to the EEOC's claim of hostile work environment under Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 2000e et seq. ("Title VII"), on behalf of Robert Floyd, Jr. ("Mr. Floyd"), the jury awarded $20,000 in compensatory damages and $75,000 in punitive damages.

As to Mr. Gill, the jury awarded $30,000 in compensatory damages on his hostile work environment claim under Title VII and 42 U.S.C. § 1981, found liability for discriminatory discharge and retaliatory discharge in violation of Title VII and 42 U.S.C. § 1981, and awarded $75,000 in punitive damages.

Mr. Gill's claim for back pay was tried to the court and is ready for decision. In addition, the following motions are before the court: Mr. Gill's motion for prejudgment attachment and/or seizure of Widenhouse's assets (Doc. 90); Mr. Gill's motion for prejudgment interest (Doc. 92); EEOC's motion for injunctive relief (Doc. 94); and Widenhouse's motion for remittitur of damages or, in the alternative, a new trial on damages (Doc. 97). Each will be addressed below.

I. ANALYSIS

    A. **Widenhouse's Motion for Remittitur and/or New Trial**

The jury returned a total verdict for Plaintiff EEOC in the amount of $95,000 ($20,000 in compensatory damages; $75,000 in punitive damages). Widenhouse moves to remit the damages award to $50,000 in accordance with the monetary cap contained in Title VII, 42 U.S.C. § 1981a(b)(3)(A) (limiting total recovery to $50,000 for each complaining party when the defendant has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year), or, in the alternative, for a new trial pursuant to Federal Rule of

2

Civil Procedure 59(a).  The EEOC agrees that Title VII so limits damages and consents to the motion.  (Doc. 101.)  Therefore, EEOC's recovery will be limited to $50,000 ($20,000 in compensatory damages and $30,000 in punitive damages), and the alternative motion for new trial is moot.

**B.   Mr. Gill's Award of Back Pay**

On January 28, 2013, Mr. Gill presented evidence to the court on his claim for back pay.[1]  Section 706(g)(1) of Title VII provides that upon a finding of intentional discrimination, the district court may order such affirmative or equitable relief, including back pay, as it deems appropriate.  42 U.S.C. § 2000e-5(g)(1); Noel v. N.Y. State Office of Mental Health Cent. N.Y. Psychiatric Ctr., 697 F.3d 209, 213 (2d Cir. 2012).  Back pay is also available under Title 42, United States Code, section 1981. Blasic v. Chugach Support Servs., 673 F. Supp. 2d 389, 402 (D. Md. 2009) (citing Kornegay v. Burlington Indus., Inc., 803 F.2d 787, 788 (4th Cir. 1986)).

The evidence demonstrated, and the court finds, that at the time of his discharge Mr. Gill earned $2,107.73 per month and that he suffered 34 months of unemployment from the time of his termination on June 9, 2008, until his hire by a new employer on May 2, 2011.  There is no credible evidence that Mr. Gill failed

---

[1]  Mr. Gill has withdrawn any request relating to his health benefits. (Doc. 89.)

3

to mitigate his damages. Indeed, the court finds Mr. Gill credible as to his testimony about his efforts to obtain employment, which were diligent. He kept a detailed log of his efforts and participated in further training to improve his skills. Thus, Mr. Gill is entitled to back pay in the amount of $71,662.82.

**C.   Mr. Gill's Motion for Prejudgment Interest**

Mr. Gill also seeks an award of prejudgment interest on his back pay damages. (Doc. 92.) The award of prejudgment interest lies within the discretion of the district court, keeping in mind the "make-whole" policy of Title VII. Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975); Maksymchuk v. Frank, 987 F.2d 1072, 1077 (4th Cir. 1993). The objective is to put the plaintiff in a position as near as possible to where he would have been had the discrimination not occurred. Maksymchuk, 987 F.2d at 1077. Interest is awarded as compensation for the use of funds and not as a penalty. Id.

Here, Mr. Gill requests prejudgment interest at the rate of eight percent, as provided by North Carolina law, N.C. Gen. Stat. § 24-1. The court is not bound to use state law, but it may do so in its discretion. E.E.O.C. v. Liggett & Myers, Inc., 690 F.2d 1072, 1074 (4th Cir. 1982) (affirming district court's use of North Carolina state interest rate). Mr. Gill seeks to have prejudgment interest compounded annually to reflect the

4

economic reality that he would have been able to accrue accumulated interest on his earnings. (Doc. 93 at 2-3.) Whether to award compound interest is also within the discretion of the court. Am. Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc., 325 F.3d 924, 938 (7th Cir. 2003) (noting that "compound interest ought to be the norm in federal matters" but that "[a]s a general rule, the decision whether to award compound or simple prejudgment interest is left to the discretion of the trial court"); Hylind v. Xerox Corp., 749 F. Supp. 2d 340, 351 (D. Md. 2010) (awarding compounded prejudgment interest), aff'd in part and rev'd in part on other grounds, 481 F. App'x 819 (2012). Compounded interest reflects the reality of the time value of money and reasonably furthers the goal of placing Mr. Gill in the position he otherwise would have been absent Widenhouse's unlawful discrimination. Hyland, 749 F. Supp. 2d at 351.

Based on the record, the court finds that prejudgment interest should be awarded on Mr. Gill's back pay award. Widenhouse was aware of the exact amount of Mr. Gill's monthly earnings at the time it fired him; the amount was certain and thus easily calculable. There was also a lengthy delay in Mr. Gill's case. Mr. Gill was terminated in June of 2008, yet the case did not get to trial and verdict until January 2013, over four and one-half years later. Of course, this delay was caused

5

in part by Mr. Gill's decision to wait until June 22, 2011, to file suit. On the other hand, he did file his EEOC charge approximately two months after his terminations, and he has lost the time value of his earnings.

The court also finds that the North Carolina interest rate of eight percent, which has been adopted by the North Carolina General Assembly as a fair rate, is appropriate. In light of the "make-whole" principle of Title VII, the court will also grant Mr. Gill's request to compound the interest annually. This is a larger remedy than simple interest, but it is less than the monthly compounding that would have been available had Mr. Gill not been terminated. Mr. Gill calculates prejudgment interest to be $16,846.97. While Widenhouse objects to entry of prejudgment interest, it does not challenge the calculation of the amount. Therefore, the court will award prejudgment interest, compounded annually, in the requested total amount of $16,847.15, for a total back pay award (with principal) of $88,509.79.

### D. Mr. Gill's Motion for Prejudgment Attachment

Mr. Gill moves for an order of attachment and/or seizure of the property and assets of Widenhouse pursuant to Federal Rule of Civil Procedure 64 and N.C. Gen. Stat. § 1-440.1. (Doc. 90.)[2]

---

[2] Mr. Gill has limited his motion to the assets of Widenhouse and not those of any of its affiliates. (Doc. 102 at 1.)

6

Mr. Gill contends that the evidence at trial demonstrates that Widenhouse is dissipating its assets in an effort to prevent Mr. Gill from being able to collect on his judgment in this case. Specifically, he points to the fact that Widenhouse's federal tax returns for tax years 2008 through 2011 show gross receipts of $3,283,843, $2,892,961, $2,643,325, and $3,246,838, respectively. (Doc. 91 at 3.) However, at trial Mr. Robert C. Barbour, an officer and part-owner of Widenhouse, testified that while as of December 31, 2011, the company had cash on hand of $556,301 (with total assets of $1,105,551), by December 31, 2012, the company has only a $38,000 cash balance. Mr. Barbour testified that the company sustained a historic loss because of fuel costs and the need to update its fleet of trucks, necessitating that the company apply for a $100,000 loan. Mr. Barbour also testified that the company was attempting to sell some of its trucks and intended to appeal the entry of the judgment against it in this case.

Widenhouse's response relies on an affidavit of Mr. Barbour, which asserts that the company's total assets for the year ending December 31, 2012, are projected to be approximately $1,004,000.[3] (Doc. 100 at 4.) This is in line with the company's reported assets for the prior four years ($1,281,489 in 2008; $1,121,129 in 2009; $1,111,367 in 2010; and $1,105,551

---

[3] The company's 2012 tax returns are not yet finalized.

in 2011). (Id. at 3.) Mr. Barbour also points out that the company did sell some of its older trucks, but those were replaced with newer model trucks. (Id.) Mr. Barbour also revised his trial estimate of cash on hand at year-end 2012, now stating it was $99,920. (Id. at Ex. 1 ¶ 11.) Therefore, he contends, the company sold some trucks to update its fleet, but otherwise has a total asset value substantially comparable to that of the prior four years.

Federal Rule of Civil Procedure 64 provides for the seizure of property as provided by state law. Prestige Wine & Spirits, Inc. v. Martel & Co., 680 F. Supp. 743, 745 (D. Md. 1988). The applicable North Carolina law, N.C. Gen. Stat. § 1-440.1 et seq., provides for attachment in several situations, but relevant here is the provision for attachment of a domestic corporation, which, with intent to defraud its creditors:

a. Has removed, or is about to remove, property from this State, or

b. Has assigned, disposed of, or secreted, or is about to assign, dispose of, or secrete, property.

Id. § 1-440.3(5).

On this record, Mr. Gill has not met his burden. To be sure, there is no evidence that Widenhouse has moved assets from the state. While the company's cash has been reduced as compared to prior years, its total asset value is nearly

8

constant. The company's explanation that the cash was used in substantial part to purchase newer trucks – a move Mr. Gill characterizes as "suspicious" in light of the company's $167,222 operating loss that year (Doc. 102 at 3) – is not evidence of any improper assignment or disposition of property, but rather is consistent with an intent to continue ongoing operations.

The attachment remedy must be strictly construed. Connolly v. Sharpe, 270 S.E.2d 564, 566 (N.C. Ct. App. 1980). Although precise compliance with the statute is not required, id., at this stage Mr. Gill's concern that Defendant is moving assets to defraud creditors is an unsupported suspicion. See id. Accordingly, his motion for prejudgment attachment will be denied.

**E.  EEOC's Request for Injunctive Relief**

EEOC's complaint includes a request for injunctive relief, and it now moves pursuant to Section 706(g)(1) of Title VII, as amended, 42 U.S.C. §2000e-5(g)(1), for a variety of remedies for the conduct demonstrated at trial.

Section 706(g)(1) of Title VII provides:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate . . . or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e-5(g)(1). The court has "not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975). The court has the authority to grant corrective relief even where the unlawful practices have been discontinued and should especially exercise its power where the record fails to demonstrate a total cessation of the unlawful practices. United States v. Gregory, 871 F.2d 1239, 1246 (4th Cir. 1989).

In the present case, the defense was predicated on a denial of wrongdoing. This presented a straightforward credibility contest between Plaintiffs' witnesses and Widenhouse's employees. Obviously, the jury was persuaded by Plaintiffs' witnesses. The evidence upon which the jury necessarily relied in rendering its verdicts of liability demonstrated that Widenhouse's discriminatory practices continued after Mr. Gill filed his EEOC charge in 2008. In fact, Mr. Floyd testified that racial slurs and wrongful conduct continued through the end of his employment in February 2010. One of the alleged harassers was Widenhouse's General Manager, Mr. Buddy Waller. Mr. Waller remained employed at Widenhouse through the time of trial and was never disciplined. Another alleged harasser was the dispatcher, Ms. Kim Griffin, and there is no evidence she

10

was ever disciplined, either (perhaps because she was the person to whom complaints were allegedly made).  The evidence also revealed that Widenhouse had no written or formalized anti-discrimination policy or reporting procedures.

Based on the evidence at trial and the complete record, the court finds injunctive relief appropriate.  In particular, the court will, in its Judgment, enjoin further illegal discriminatory conduct, require Widenhouse to remove references of the events leading to the finding of unlawful conduct from the files of Messrs. Gill and Floyd, require Widenhouse to adopt and post a formal anti-discrimination policy with reasonable reporting provisions, impose reasonable training and reporting requirements on Widenhouse as to its corrective efforts, require Widenhouse to record all instances of complaints of unlawful racial behavior alleged to violate Title VII and/or Defendant's anti-discrimination policy, and permit EEOC to monitor compliance through reasonable inspections of appropriate records of the Defendant.  These provisions are reasonably tailored to remedy the unlawful conduct in this case.  The court finds, based on the record, that the injunction should be in place for a period of three years to ensure compliance.

II. CONCLUSION

Therefore, based on the jury's verdict and the court's determinations set forth above,

IT IS ORDERED that EEOC is entitled to recover from Widenhouse the amount of Fifty Thousand dollars ($50,000) in compensatory and punitive damages.

IT IS FURTHER ORDERED that Mr. Gill is entitled to recover from Widenhouse the amount of One Hundred Ninety-Three Thousand Five Hundred Nine and 79/100 dollars ($193,509.79), this sum being comprised of One Hundred and Five Thousand and 00/100 dollars ($105,000) in compensatory and punitive damages, plus Seventy-One Thousand Six Hundred Sixty-Two and 82/100 dollars ($71,662.82) in back pay, plus compounded prejudgment interest on the back pay award in the amount of Sixteen Thousand Eight Hundred Forty-Six and 97/100 dollars ($16,846.97).

IT IS FURTHER ORDERED that Plaintiffs be awarded their costs of this action.

The parties are advised that any application for attorneys' fees must comply with Local Rule 54.2.

An appropriate Judgment will issue separately.

                                        /s/   Thomas D. Schroeder
                                      United States District Judge

February 22, 2013